UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOUIR
EASTERN DIVISION

| | | |
|---|---|---|
| KYLE MAURICE PARKS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 1923 JAR |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## GOVERNMENT'S RESPONSE TO THE PETITIONER'S MOTION PUSUANT TO TITLE 28 UNITED STATES CODE, SECTION 2255

COMES NOW, the United States of America, by and through Jeffrey B. Jenson, United States Attorney for the Eastern District of Missouri, and Howard J. Marcus, Assistant United States Attorney for said District, and in response to the Petitioner's Motion Pursuant to Title 18 United States Code, Section 2255 respectfully requests that it be dismissed and denied without a hearing. In support, the government states as follows:

## I.   HISTORY OF THE CASE

On December 4, 2015, Kyle Maurice Parks (hereafter "Parks") was charged by complaint with transportation of a minor in interstate commerce for the purposes of prostitution (in violation of Title 18 U.S.C. § 2421(a)) (District Court Docket, hereinafter "DCD," 1).  On December 19, 2015, Parks was subsequently indicted by a Grand Jury in the Eastern District of Missouri and charged with one count of violating § 2421(a).  (DCD 3).

On August 10, 2016 after a lengthy investigation, the Grand Jury issued a superseding indictment (DCD 69), charging Parks with one count of sex trafficking of a minor (in violation of Title 18 U.S.C. § 1591(a)) (Count I); two counts of attempted sex trafficking of a minor (Counts

III and V); and six counts of transporting subjects in interstate commerce for the purposes of prostitution (in violation of Title 18 U.S.C. § 2421(a)) (Counts II, IV, VI, and IX).

Trial in this matter commenced on January 9, 2017.  On January 12, 2017, the jury found Kyle Maurice Parks guilty of all counts.   On April 19, 2017, this Court sentenced Parks to a total term of 300 months. The sentence consisted of 300 months for Counts I, III and V to be served concurrently and concurrent with a 120 month sentence on Counts II, and Counts IV through IX, followed by a life time term of supervised release. On April 25, 2017, Parks filed a notice of appeal to the Eighth Circuit Court of Appeals. Parks' appeal was briefed and submitted to the Court and the conviction was affirmed in *U.S. v. Parks*, 902 F.3d 805 (8th Cir 2018).

The background facts of the case are as follows:

Detective Mark Young, a Columbus, Ohio Police Officer, was assigned as a detective to the Ohio Human Trafficking Taskforce.  On December 2, 2016, Young received information that TS, a seventeen-year-old female, had run away from an Ohio juvenile residential facility.  On December 3, 2016, TS's mother contacted Det. Young and told him that TS had called her and said that she was on her way to Florida with some friends.  Det. Young believed that TS was in danger and requested an emergency cell phone "ping" to determine her location.  As a result of the "ping," Ohio police determined that TS's cell phone was currently located in the vicinity of Highway 70 and Zumbehl Road, by a Red Roof Inn, in St. Charles, Missouri.  (Tr. Vol I at 171-175).

Det. Young asked the St. Charles Police Department to dispatch officers to the Red Roof Inn and check for any vehicles with Ohio license plates.  Det. Young indicated that St. Charles officers told him that they had located a gray Dodge Caravan with a temporary Ohio license plate

registered to Parks.  Det. Young responded that he was familiar with Parks and that TS was likely with Parks.  (Tr. Vol I at 178).

After speaking with Det. Young, St. Charles Police Officers Fruits, Jermeyer, and Kukenhall contacted the Red Roof Inn office and inquired if the motel had rented any rooms to occupants from Columbus, Ohio.  A hotel employee informed the officers that two young women from Columbus, Ohio, RW and KO, were currently renting rooms at the hotel.  The employee determined that RW rented room 233.  The officers proceeded to room 233 and knocked on the door.  RW answered the door  and  Officers observed RW and TM, a minor female, in the room. After conversing with them, the officers went to room 232 where they located KO and TS, the high-risk missing juvenile.  (Tr. Vol I at 243-246).

St. Charles Police contacted Detective Sergeant Adam Kavanaugh, asking him and the FBI Human Trafficking Task Force take over the investigation at the Red Roof Inn.  Sgt. Kavanaugh was the supervisor for the St. Louis County Police Department, Special Investigations Unit, which investigated child exploitations, prostitution, and human trafficking cases; Sgt. Kavanaugh was also part of the FBI Human Trafficking Task Force.  Sgt. Kavanaugh and other Task Force members responded to the Red Roof Inn and contacted the occupants of rooms 232 and 233.  Sgt. Kavanaugh found the 17-year-old missing juvenile, TS, 15-year-old LL, and KO in room 232.  (Tr. Vol II at 37-40).

KO consented to the search of Room 232.  Sgt. Kavanaugh observed stained, soiled, and unkempt linens, Tampax, numerous sealed packages of condoms, used condoms, prepaid gift cards, drug paraphernalia, male clothing, papers bearing Parks' name, and an Ohio  municipal court document citing KO for prostitution.  (Tr. Vol II at 40-59).

Detective Jared Queen obtained and reviewed the front desk surveillance video from the Red Roof Inn on December 2, 2015. Det. Queen identified Parks, RW, and KO together at the check-in counter of the Red Roof Inn in the time stamped video. (Tr. Vol II at 177). Parks and both adult victims were plainly visible in the video.

The victims were subsequently interviewed by law enforcement. KO told the officers that she had committed acts of prostitution while at the Red Roof Inn and that she had given the money that she had earned to Parks. (Tr. Vol I at 216-217, 227). KO also stated that she previously worked as a prostitute for Parks in Ohio.

Sgt. Kavanaugh began to search for Parks and discovered that Parks, his van, and 17-year-old SL were missing from the motel. (Tr. Vol II at 63).

The next morning's shift officers were briefed on Parks and the incident at the Red Roof Inn through an email that included a color photo of Parks and a description of Parks' car. (Tr. Vol II at 85-86). On the morning of December 3, 2015, Police Services Officer David Knobel (an unsworn police employee) was working the desk at St. Charles Police Station. Officer Knoble had read the email about Parks and the incident at Red Roof Inn. (Tr. Vol II at 85-86). At 9:00 a.m., Parks entered the station and told Officer Knoble he was Kyle Parks and was looking for a woman. Knoble recognized Parks from the image contained in the prior email. Officer Knoble then summoned Officer Paul Yadlosky and Detective Stefanie Kaiser. When Officer Yadlosky arrived in the lobby, Parks walked toward the door and looked out the lobby window towards his grey Dodge Caravan. (Tr. Vol II at 89). Det. Kaiser was similarly aware of the incident at Red Roof Inn and was aware that Parks and a minor were missing. She entered the lobby and could see the grey Dodge Caravan parked in front of the police station. (Tr. Vol II at 92-94).

Det. Kaiser testified that at the time, her primary concern was whether the missing female might be in the van.  (Tr. Vol II at 89).  Det. Kaiser and Officer Yadlosky went out to the van to look for the missing female.  Det. Kaiser peered in the window and saw an unresponsive person lying in the middle row of seats, her hair wrapped up such that Det. Kaiser could not see her face, which made it difficult to determine the person's condition.  (Tr. Vol II at 94-95).  The officers attempted to get the occupant's attention by banging on the windows; the occupant did not respond. Officer Yadlosky then opened the door to the van and they located a "sluggish and slow" young female (later identified as SL, a minor).  (Tr. Vol II at 93-95).  Office Yadlosky smelled a strong order of marijuana coming from the van.  He also found a small bag of marijuana on the floorboard by SL.  (Suppression Hearing Tr. At 35-37).  Det. Kaiser observed phones, clutter, and a small amount of marijuana in the van.  (Tr. Vol II at 94-98).

After this interaction, Parks was detained and Officer Yadlosky conducted a cursory search of the van, "just looking basically for bodies, for another person."  (Suppression Hearing Tr. at 38).  After engaging in a cursory search, Yadlosky requested a drug detection dog respond to the police station to sniff the van.  The handler and the dog examined the van and the dog "hit," indicating the possible presence of controlled substance.  (Suppression Hearing Tr. at 39-40).

The Human Trafficking Task Force officers were again directed to respond to the St. Charles police station in order to address what to do with the van.  Sgt. Kavanaugh, as the on-scene commander, decided that the van was to be towed from the parking lot, inventoried and secured, pursuant to department policy.  (Suppression Hearing Tr. at 19, 21).

Based upon the agents and police officers investigations, they concluded that Parks engaged in the sex trafficking or attempted sex trafficking of all six victims and transported the six victims to St. Louis for the purposes of prostitution. Special Agent Ryan Scheiderer, of the Ohio

5

Bureau of Criminal Investigation then obtained and subsequently executed a search warrant at Parks' brothel, located at 4211 Donlin Court in Columbus, Ohio. The search recovered evidence related to sex trafficking and prostitution as well as corroborated some of the victim's testimony.

## II.   PRINCIPLES GENERALLY APPLICABLE TO MOTIONS PURSUANT TO 28 U.S.C. § 2255

In general, to state a claim for relief under Title 28, United States Code, Section 2255, a federal prisoner must prove one of the following: (1) his sentence was imposed in violation of the laws or Constitution of the United States; (2) the sentencing court did not have jurisdiction to impose the sentence; (3) his sentence exceeded the maximum allowed by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424 (1962).  The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to relief in cases involving collateral attack on a criminal conviction.  *United States v. Skinner*, 326 F.2d 594, 597 (8th Cir. 1964).

Section 2255 is not designed to provide a remedy for "all claimed errors in conviction and sentencing."  *United States v. Addonizio*, 442 U.S. 178, 185 (1979).  Instead, a Section 2255 cause of action is intended only to correct an error which rises to the level of a "fundamental defect" which "inherently results in a complete miscarriage of justice."  *Hill*, 368 U.S. at 427.

In addition, a collateral attack pursuant to Section 2255 is not interchangeable or substitutable for a direct appeal.  *United States v. Frady*, 456 U.S. 152, 165 (1982).  That is, a defendant is usually precluded from asserting claims in a Section 2255 motion that he has failed to raise on direct appeal.  *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001); *Poor Thunder v. United States*, 810 F.2d 817, 823 (8th Cir. 1987).  One exception arises when there is a "miscarriage of justice," but the Eighth Circuit has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence," and the Supreme Court

6

has not extended the exception beyond situations involving actual innocence.  *United States v. Wiley,* 245 F.3d 750, 752 (8th Cir. 2001). Indeed, the Eighth Circuit has emphasized "the narrowness of the exception and has expressed its desire that it remain rare and available only in the extraordinary case." *Id.* "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousely v. United States,* 523 U.S. 614, 622 (1998) (citations omitted).

A movant must provide sufficient allegations in his Section 2255 motion.  "Vague and conclusory allegations are not sufficient to state a ground for relief under 28 U.S.C. § 2255." *Hollis v. United States*, 796 F.2d 1043, 1046 (8th Cir. 1986).  "A § 2255 motion must "state the facts supporting each ground."  *United States v. Michael*, No. 215CR20030PKHMEF1, 2017 WL 5589160, at *6 (W.D. Ark. Oct. 30, 2017), *report and recommendation adopted*, No. 2:15-CR-20030, 2017 WL 5571311 (W.D. Ark. Nov. 20, 2017) (citing Rule 2(b), Rules Governing § 2255 Proceedings).

A movant is not entitled to an evidentiary hearing when the § 2255 motion and the files and records of the case conclusively show that the movant is not entitled to relief.  *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995) (citing *Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985); *see also Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (quoting *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008).  Section 2255 motions may be dismissed without evidentiary hearing if the "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *United States v. Carlson*, No. CR 11-363 (JRT/JJK), 2017 WL 2483781, at *3 (D. Minn. June 8, 2017) (quoting *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).  *See also Garcia v.*

*United States,* 679 F.3d 1013, 1014 (8th Cir. 2012) (a hearing should be held unless movant's allegations are contradicted by the record, inherently incredible, merely conclusions, or would not entitle the petitioner to relief.") A petition which consists only of "conclusory allegations unsupported by specifics" or "allegations that, in the face of the record, are wholly incredible" is insufficient to overcome the barrier to an evidentiary hearing.  *Voytik*, 778 F.2d at 1308 (quoting *Blackledge v. Allison*, 431 U.S. 63, 73, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977)); *see also Smith v. United States*, 618 F.2d 507, 510 (8th Cir. 1980) (mere statement of unsupported conclusions will not suffice to command a hearing); *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993) (The court need not give weight to "conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets."); *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (No hearing is required when "the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.").

## III.   ANALYSIS

Parks makes a series of baseless and unsupported allegations of government misconduct. He alleges that police engaged in misconduct by conspiring to plant evidence and providing perjured testimony in hearings and at trial. He also claims that the attorneys for the government knowingly engaged in prosecutorial misconduct and offered perjured testimony.   The government denies these allegations and asserts that no misconduct occurred, no evidence was planted and that the government offered truthful testimony.

### A.   Standard

#### i.   Prosecutorial Misconduct

There was absolutely no prosecutorial misconduct in the course of this prosecution and trial. However, even if there were, reversal of a conviction on the basis of prosecutorial misconduct

8

is not required unless the prosecutor's improper conduct or remarks "prejudicially affected an individual's substantial rights and deprived him of a fair trial." *United States v. Tulk*, 171 F.3d 596, 599 (8th Cir. 1999) (citing *United States v. Benitez-Meraz,* 161 F.3d 1163, 1166 (8th Cir. 1998); *United States v. Hernandez*, 779 F.2d 456, 458 (8th Cir. 1985); *see also United States v. Alaboudi*, 786 F.3d 1136, 1141 (8th Cir. 2015) (quoting *United States v. Davis*, 534 F.3d 903, 914 (8th Cir. 2008)).

"Factors to consider in assessing prejudice include the cumulative effect of any misconduct, the strength of the properly admitted evidence, and any curative actions taken by trial court." *Tulk*, 171 F.3d 596, 599 (citing *Benitez-Meraz*, 161 F.3d at 1166).

## ii.   Perjured Testimony

The government did not present any form of perjured testimony. In order to vacate a judgement and sentence on the grounds of perjured testimony, defendant must establish two elements: (1) the use of perjured testimony; and (2) knowledge by the prosecuting officials at the time the testimony was used that it was perjured. *Holt v. United States*, 303 F.2d 791, 794 (8th Cir. 1962) (citing *Taylor v. United States*, 229 F.2d 826, 832 (8th Cir. 1956)). False testimony alone and of itself does not vitiate a judgement. *Id*. (citing *Rules v. United States*, 198 F.2d 199, 200 (10th Cir. 1952). The defendant has the "burden of establishing the existence of the foregoing elements." *Id*.

## B.   Parks' Government Misconduct Allegations

Parks makes numerous, unsupported, and unfounded allegations of government officials being involved in a conspiracy to plant evidence and lie on the witness stand.  It is of note that Parks, a convicted felon, made many false, specious and unfounded allegations during the course of his testimony during trial.

**Ground One**: Government Misconduct of Detective Matthew Black

Parks alleges that Detective Black planted cell phones in the van.  Parks also alleges that Det. Black perjured himself when Det. Black "reported that he had located four (4) cell phones belonging to "Parks" when actually three (3) of the cell phones were property of KO, TS, and LL." (DCD 23, p. 6).  Parks claims that Sgt. Kavanaugh "should have known that the allege cell phones were not the property of Parks and exercise his position and stopped the misconduct."  (DCD 23, p. 6).  Parks claims that Det. Black's reporting of the cell phones deprived him of his "constitutional rights and liberties."  (DCD 23, p. 6).  This is a baseless and unsupported allegation and counter to all the facts and evidence in this case. To support his claims, Parks cites "see all reports and addendum filed under appeal 18-3431."  (DCD 23, p. 6).

Parks does not offer particular or definite evidence as to how Sgt. Kavanaugh should have known that Det. Black misreported the cell phones.  By claiming that Sgt. Kavanaugh should have known nor does Parks offer an explanation as to why reporting the phones as "belonging" to Parks is faulty.  Parks' vague and conclusory statements are insufficient for relief.

**Ground Two**: Government Misconduct of (1) Sergeant Adam Kavanagh, (2) Officer Paul Yadlosky, (3) Detective Matthew Black, (4) David Knoble, and (5) Detective Jared Queen

Parks argues that officers of St. Charles Police Department filed false reports, committed perjury at trial and  the evidentiary hearing, and lied to federal agents. This is an unsupported and baseless allegation and is counter to the facts and evidence in this case.

(1) Sgt. Kavanaugh

Parks argues that as Sgt. Adam Kavanaugh is "the superior officer of the investigation, as all actions of his subordinates are his responsibility." (DCD 23, p. 8).  Parks' statement is a legal conclusion unsupported by factual evidence.  Parks claims that because Sgt. Kavanaugh was

present at "all these stages of the investigation that resulted in the violations of my civil rights," (DCD 23, p. 8), Sgt. Kavanaugh "enter[ed] into the conspiracy of evidence planting, obstruction of justice, dishonesty, aiding and abetting, racketeering." (DCD 23, p. 8). Parks claims that Sgt. Kavanaugh lied at trial and evidence hearing when he stated that [Parks] had Bitcoin on his cell phones used to place ads on Backpage. (DCD 23, p. 8).

Parks' allegation that Sgt. Kavanaugh committed perjury while testifying does not satisfy the necessary elements to vacate a judgement based on perjured testimony. Parks has not established how Sgt. Kavanaugh's testimony of Bitcoin on Parks' phone was in fact perjured. Parks' claims against Sgt. Kavanaugh are insufficient for relief.

(2) Officer Yadlosky

Parks identifies discrepancies between Officer Yadlosky's testimony at the evidentiary hearing with Officer Yadlosky's written report dated December 4, 2015. First, Parks highlights that in his testimony, Officer Yadlosky recalled banging on window, while in his report, Officer Yadlosky wrote that he tapped on the window. (DCD 23, p. 8). Second, Parks identifies that Officer Yadlosky testified that he searched the van and saw four cell phones, but Officer Yadlosky did not mention any cell phones in his report or act of search. (DCD 23, p. 8). Parks reaches the conclusion that Officer Yadlosky therefore filed a false report or committed perjury.

In these allegations, Parks fails to establish how these errors constitute a deprivation of his constitutional rights sufficient to raise to the level of a "fundamental defect" which "inherently results in a complete miscarriage of justice." Therefore, Parks' claims against Officer Yadlosky are insufficient for relief.

(3) Det. Black

Parks claims Det. Black committed "perjury," "obstruction of justice," and "conspiracy to cover-up evidence planting and racketeering."  (DCD 23, p. 9).  Parks claims that Det. Black "lied when asked by defense 'Did he plant the cell phones in Parks Van.' He answered 'No.' Evidence and reports written by him and other officers shows difference."  (DCD 23, p. 9).

Parks' conclusory statement that "evidence and reports written by him and other officers shows the difference" (DCD 23, p. 9), fails to particularly and definitively evidence misconduct.

(4) David Knoble

Parks purports to compare Knoble's reports to Officer Yadlosky's reports, which, according to Parks, reveal "no less that five (5) separate lies."  (DCD 23, p. 9).  Parks offers as evidence that "[t]he report was written one year from the date of the event."  (DCD 23, p. 9).  Defendant cites "reports submitted to circuit panel, 18-3431."  (DCD 23, p. 9).

Parks fails to articulate the "five (5) separate lies" that deprive him of Due Process.

(5) Det. Queen

Parks claims that when Det. Queen wrote that the victims had cell phones, and noted those cell phones in the inventory section of the report, Det. Queen "should have reported the inconsistence to someone for consideration of misconduct.  Instead he too join the conspiracy to remain silent and cover up evidence planting, obstruction of justice."  (DCD 23, p. 10).  Parks continues, "Furthermore, a subpoena will show that Det. Queen change the time of check-in on still photo of Parks on Dec. 3, 2015 to increase the time line of events."  (DCD 23, p. 10).

Parks falsely maintains that Det. Queen altered the time of the events in the report as well as the photographic evidence that documented his arrival at the hotel. Further, Parks' allegations are contrary to the sworn testimony of the victims.

In *United States v. Chase*, No. CR 11-150 (JRT/JSM), 2015 WL 6150600, at *5 (D. Minn. Oct. 19, 2015), the defendant, in a Section 2255 motion, argued that law enforcement lied when testifying in grand jury proceedings, which violated defendant's due process rights. The district court found that this ground failed because defendant "offer[ed] nothing more than bare assertions and conclusory allegations that are not supported in the record." *Chase*, 2015 WL 6150600, at *5. The district court found defendant's next argument similarly without merit. "Without any support in the record, [defendant] seeks relief merely by alleging that a vast law enforcement conspiracy retaliated against him and uploaded images and videos in his name. Without more to support this argument, the Court will not conclude that [FBI Special Agent] was lying under oath at trial." *Id.*

In *Holt*, the Eighth Circuit found that defendant's Section 2255 motion failed to particularize the perjured testimony said to have been knowingly used. As such, the Eighth Circuit would have been justified in "refusing to consider this contention." *Holt*, 303 F.2d at 794. Nonetheless, the Eighth Circuit examined the evidence and found that the defendant's contention was "utterly without merit." *Id.* Defendant claimed that a government's witness' testimony was false because some particulars did not match with prior testimony in a different trial. *Id.* The Eighth Circuit held that even if it could be assumed that the witness' testimony was false, there was "absolutely no evidence to support the second element, i.e., that the prosecuting officials had knowledge of the falsity of the testimony at the time it was introduced." *Id.*

Parks' assertions that Sgt. Kavanaugh, Officer Yadlosky, and Det. Black committed perjury while testifying under oath and Knoble and Det. Queen lied on in their reports are bare assertions and conclusory allegations that are not supported on the record and should be found meritless.

**Ground Three**: Government Misconduct of Assistant United States Attorneys Howard Marcus and Jennifer Winfield

Parks claims that "A.U.S.A. Howard Marcus and Jennifer Winfield knowingly allowed government witness to submit false reports, planted evidence and perjury at trial and evidence hearings to secure a victory at trial."  (DCD 23, p. 13).   Parks offers no credible evidence in support of  these allegations.

Parks cites *Napue v. People of State of Ill.*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959) in support of his claim that the Government knowingly allowed five law enforcement officers to commit perjury at the trial and evidentiary hearing.   In *Napue*, the petitioner was convicted of murder.   During his trial, the state's witness, then serving a sentence for the same murder, "testified in response to a question by the Assistant State's Attorney that he had received no promise of consideration in return for his testimony.  The Assistant State's Attorney in fact promised him consideration, but did nothing to correct the witness' false testimony." *Napue*, 360 U.S. at 265.   In *Napue*, the Assistant State's Attorney filed a petition in the nature of a writ of error coram nobis on behalf of the witness who testified falsely.   *Id.,* at 266.   The attorney testified at a subsequent hearing.  *Id.*, at 267.   The Supreme Court held that where "important witness for the State, in murder prosecution of petitioner, falsely testified that witness had received no promise of consideration in return for his testimony, though in fact Assistant State's Attorney had promised witness consideration, and Assistant State's Attorney did nothing to correct false testimony of witness, petitioner was denied due process of law in violation of the Fourteenth Amendment to the Federal Constitution." *Id.*

In Parks' Section 2255 motion, he makes baseless and unsupported allegations and  he does not produce any facts that would show any perjury or false statements. Even if he had, he has failed

to show how the Assistant United States Attorneys Howard Marcus and Jennifer Winfield would have known that the testimony given at the evidentiary hearings and trial were lies.  The instant case is distinguishable from *Napue* as in the instant case the Government did not have conversations with the witnesses in which the Government promised consideration for their testimony.  The Government also relied on the witnesses to tell the truth regarding the events and did not believe any of the witness's statements to be false.  Therefore, the Government did not know at the time of the testimony that the testimony was perjured.

The defendant in *United States v. Chappell*, 292 F.Supp.3d 916 (D. Minn. 2017) argued that the government knowingly used perjured testimony when a witness falsely testified about the witnesses' age when the witness met defendant.  *Chappell*, 292 F.Supp.3d at 936-37.  The district court held that defendant "has not demonstrated that the government used perjured testimony, that the government knew or should have known of the alleged perjury, or that there is a reasonable likelihood that the perjured testimony could have affected the jury's verdict." *Id.*, at 937.

Similarly, in the instant case, Parks failed to demonstrate that the Government used perjured testimony, that the Government knew or should have known of the alleged perjury, or that there is a reasonable likelihood that the perjured testimony could have affected the jury's verdict. *See Chappell*, 292 F.Supp.3d at 937,  Parks' claims of such conduct are without merit.

**Ground Four**: Government Misconduct of Assistant United States Attorneys Howard Marcus and Jennifer Winfield

Parks argues that the alleged prosecutorial misconduct affected his substantial rights because it convinced the Court to allow in 404(b) evidence.  Parks claims that "A.U.S.A. Howard Marcus and A.U.S.A. Jennifer Winfield, together with plan and wonton effort.  Committed fraud upon the court at pretrial motions.  Knowingly and fully aware that the verbal affidavit was false

and constituted fraud in a United States District Court." (DCD 23, p. 14). Parks argues that "A.U.S.A. Howard Marcus received a report from F.B.I. agent Nikki Badolato stating exactly all ads placed and what email was used to secure say ads, together they had to have planned the narrative because Ms. Winfield enter into the conversation 'lock-step.'" (DCD 23, p. 15). Parks argues that the Government's "lie in regards to me using my cell phone and my email" convinced the Court to allow in 404(b) evidence, which ultimately denied him of Due Process. (DCD 23, p. 15). This allegation, like all others is baseless and not supported by any evidence.

Parks fails to identify how the Government lied on the affidavit. Parks' vague illusions to a plan do not demonstrate specific acts of prosecutorial misconduct.

In addition, Parks does not demonstrate how the affidavit "convinced" the Court to admit the evidence under 404(b). Parks fails to show how the evidence could not have been admitted for any other proper reason.

**Ground Five**: Government Misconduct of Detective John Halliday

Parks claims that on "January 4, 2016, Detective Halliday submitted a sworn affidavit of truth to the Honorable Magistrate Judge John M. Bodenhausen allowing him to remove data for evidentiary value. In doing so Detective John Halliday submitted false statements under penalty of perjury to obtain approval." (DCD 23, p. 20). Parks claims that Detective Halliday wrote that pimps often use multiple cell phones and then lied on the affidavit when "Detective Halliday knew that the cell phones of the victims before lying on his affidavit to Judge Bodenhausen." (DCD 23, p. 20). Parks claims that "[o]n Dec. 21, 2015 Detective Queen released the written transcribe interview of all female subjects. In the report on inventory obtain in vehicle detective Queen wrote cell phones of victims in his account. Detective Holliday committed perjury by affidavit,

conspiracy to cover up detective Black's misconduct in planting of evidence, obstruction of justice and racketeering." (DCD 23, p. 20-21).

This appears to be another one of Parks' baseless allegations of perjury. There is absolutely no evidence of perjury. Even if Det. Halliday did use perjured testimony, Parks failed to demonstrate knowledge by the Government at the time the testimony was used that the testimony was perjured. *See Chappell*, 292 F.Supp.3d at 937; *Holt*, 303 F.2d at 794.

**Ground Six**: Government Misconduct of Detective Jared Queen

Parks makes the baseless and unsupported claim that Detective Jared Queen "submitted a still photo of Parks checking into the Red Roof Inn on Dec. 3 2015 that was fabricated" because "the time of 6:23 am was change from it true check-in time between 4-5 o'clock pm." (DCD 23, p. 22). Defendant further states that "Detective Queen and all four female subject testified that the 6:23 am time was correct." (DCD 23, p. 22). Parks testified at his trial and was obsessed with the 6:23 am time of arrival and repeatedly claimed that the time was in error.

The time of his check in to the Red Roof Inn also was corroborated by four other witnesses. Even if Det. Queen's testimony was perjured, Parks failed to demonstrate knowledge by the Government at the time the testimony was used that the testimony was perjured. *See Chappell*, 292 F.Supp.3d at 937; *Holt*, 303 F.2d at 794. Therefore, Parks claim should be found without merit.

**Ground Seven**: Improper Jury Instructions

Parks claims that the "District Judge" failed "to explain law that is applicable to the charge crime." (DCD 23, p. 23). Parks argues that "[i]n this case reasonable opportunity to observe, reckless disregard, force, threat of force or coercion never was explain or [recited] to the jury." (DCD 23, p. 23). Parks was provided an opportunity to object to any and all instructions and at

the conclusion of the on the record instruction conference made no objections. Therefore he is now procedurally barred from raising this in this instant petition.

Parks also injects the unsupported and baseless claim that he is actually innocent because he (1) "knew none of the minor over 20 hours.  If reasonable opportunity to observe does not exist reckless disregard is not even applicable," (2) "told her not to have sex with anyone just go on date."  and 3) "never got any money and never came back."  (DCD 23, p. 23).

"Jury instructions are evaluated in the context of the entire charge."  *United States v. Evans*, 272 F.3d 1069, 1086-87 (8th Cir. 2001) (citing *United States v. Davis*, 237 F.3d 942, 944 n. 2 (8th Cir. 2001).  The Eighth Circuit held that it does not reverse a conviction "unless, viewed in their entirety, the jury instructions fail to state the law correctly."  *Id.* at 1087 (citing *United States v. Paul*, 217 F.3d 989, 996 (8th Cir. 2000).

Here, Parks calls for the explanation of law that is not involved in the charge.  The jury instructions issued by the Court correctly stated the law.

**Ground Eight**: Consolidation of Charges

Parks argues that the "offense defined in section 2421 is best regarded as a lesser included offense of section 2423(A)" because "the transportation of more th[a]n one person, in one vehicle at the same time can justify only one count."  (DCD 23, p. 24).  Parks argues that "[a] defendant cannot be charge[d] with separate charges for transportation of individuals even if one is a[n] adult and one is a minor."  *Id*.  Therefore, Parks argues, "Counts 1-9 should all have been consolidated into one singular count . . . Verdict should be reversed."  *Id*.

In the superseding indictment, Parks was charged with one count of sex trafficking of a minor (in violation of Title 18 U.S.C. § 1591(a)) (Count I); two counts of attempted sex trafficking of a minor (Counts III and V); and six counts of transporting subjects in interstate commerce for

the purposes of prostitution (in violation of Title 18 U.S.C. § 2421(a)) (Counts II, IV, VI, and VII to IX).  A jury found Parks guilty of all counts on January 12, 2017 after a four day trial.

Parks did not object to or challenge the indictment in the pre-trial motion phase of the prosecution. Parks also failed to raise this issue on direct appeal. He raises this issue for the first time in this instant petition.  As a result, he is barred from raising it as now stated.

Fed. R. Crim. P. 12(b)(3)(B)(ii) provides:

Motions That Must Be Made Before Trial.

The following defenses, objections, and requests must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits:

> (B) a defect in the indictment or information, including:

> (ii) charging the same offense in more than one count (multiplicity)

Under Rule 12(b)(4)(B)(c)(3):

> If a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely.  But, a court may consider the defense, objection, or request if the party shows good cause.

Parks, as noted, failed to raise this objection prior to trial and now seems to suggest that it is was incumbent on the court to detect any possible deficiencies with the indictment. As, such, he has not shown good cause. *United States v. Fry,* 792 F.3d 884, 888 (8th Cir. 2015).

Parks did not raise this issue in his direct appeal. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States,* 523 U.S. 614, 621 (1998); *see also United States v. Frady,* 456 U.S. 152, 165 (1982) ("a collateral challenge may not do service for an appeal"). Failing to raise the issue is a procedural default.

19

To properly raise this issue, Parks must show both "cause" for failure to raise this issue during direct appeal, and "actual prejudice" resulting from the error or must be proceeding under the actual innocence exception. *See Bousley, 523 U.S. at 622; Frady, 456 U.S. at 167-68.* As to "actual prejudice", a movant must show that the error "worked to [his or her] actual and substantial disadvantage". *Frady,* 456 U.S. at 170. In this case, Parks may have shown actual prejudice but fails to show cause for his failure to address this claim on direct appeal.

It appears that Parks is substantively alleging that the indictment as to Counts II, IV and VI are multiplicitous.  The government, concedes that as to Counts II, IV, and VI through IX (Transportation for the purposes of prostitution), that those counts maybe multiplicitous. In *Bell v. United States,* 349 U.S 81, (1955), the United States Supreme Court considered this issue as it related to Title 18 U.S.C. Section 2421. In *Bell,* the defendant transported two adult victims in one act of travel and the defendant was charged with two separate counts under Section 2421.  The Supreme Court found that the indictment was multiplicitous, as the defendant could only be charged with one act of travel no matter how many adult victims were in the car.

However, each count of sex trafficking or attempted sex trafficking as outlined in Counts I, III, and V of the indictment, were properly charged and are not multiplicitous.

An indictment is multiplicitous if the same charges are charged in two or more counts. *United States v. Chipps,* 410 F.3d 438, 447 (8th Cir. 2005). The concern with such an indictment is that a jury could convict a defendant of both counts subjecting a defendant to multiple punishments for the same crime, in violation of the double-jeopardy clause of the Fifth Amendment. When the same statutory violation is charged twice, the question is whether congress intended the facts underlying each count to make up a separate unit of prosecution. The unit of prosecution is the aspect of criminal activity that congress intended to punish. *Id. at* 448. In order

to determine this, courts should look to statutory language, legislative history and statutory scheme. *United States v. Kinsley,* 518 F.3d 665, 668 (8th Cir. 1975). One factor in considering congressional intent is the fact that Congress sought to punish trafficking aggressively. It has amended Section 1591 several times to allow for more extensive prosecutions of an exploitive crime. *United States v Keys,* 747 Fed.Appx. 198 (5th Cir. 2018).

The charges concerning the Section 2421 violations, the Section 1591 violation and the 1594 violations are all distinctly different and all require different elements. The Court gave Instruction Number 10, the verdict director for Count I:

*One:* The defendant knowing recruited, enticed, harbored, transported, obtained, or maintained by any means a person (T.S.);

*Two:* That the defendant did so knowingly or in reckless disregard of the fact that T.S. had not obtained the age of 18 years and would be caused to engage in a commercial sex act:

*Three:* That the defendant acts were in or effecting interstate commerce.

The Court gave Instruction Numbers 13 (Count III, Victim L.L) and 15 (Count V, Victim T.M), the verdict directors for the Section 1594 violations:

*One:* The defendant knowingly attempted to recruit, entice, or obtain, by any means a person (L.L , Count III; T.M., Count V):

*Two:* That the defendant did so knowingly or in reckless disregard of the fact that (L.L. or T.M.) had not attained the age of 18 years and would be caused to engage in a commercial sex act;

*Three:* That the defendant acts were in or affecting interstate commerce; and

*Four:* That that the defendant voluntarily and intentionally carried out some act that was a substantial step towards the commission of that crime.

21

The Court gave these instructions for the Section 2421 Counts:

*One,* the defendant knowingly transported (the victim) across a state line: and

*Two:* the defendant knowingly transported (the victims) with intent that (the victim) engage in prostitution.

A review of the elements of Section 2421, Section 1591 and 1594  show that each are different and require different, distinct or additional elements to prove each crime. Each requires proof of fact that the other does not. Sections 1591 and 1594 are age specific and have a broad interstate commerce requirement. These crimes can be achieved without crossing state lines through the use any means of interstate commerce including cell phones, the internet or condoms (condoms are not manufactured in Missouri). The Section 1594 charge, has additional distinctly different elements, attempting to commit a crime (successful commission is obviously not required) plus the commission of a substantial step.  Finally Section 2421 violations necessitate physically crossing state lines and as charged or not age determinative. Therefore charging Sections 1591, 1594 and 2421 together does not raise a multiplicity problem.

Therefore, if the Court concludes that Parks is not barred from raising this issue for the first time in this petition, and he may proceed with his claim, then the Court may only consider dismissing the Title 18 U.S.C. Section 2421(a) Counts IV, VI, VII, VIII and IX, and allow the Count II, 2421(a) violation to stand. In addition, if the indictment were to be found multiplicous as to those counts, it would have no impact on the remaining counts.

Lastly, the Court sentenced Parks to concurrent 300 month terms for the violation of Section 1591 and for the three Section 1594 violations. The Court further ordered the defendant serve concurrent 120 month sentences for the Section 2421 violations which were to be concurrent

to the 300 month concurrent sentences. Therefore if Counts IV, VI, VII, VIII and IX were dismissed, the sentence would remain the same five of the Section 2421 counts were dismissed, the sentence would remain the same.

**CONCLUSION**

Parks makes vague and conclusory allegations in his Section 2255 motion, which are insufficient grounds for relief.   Therefore, based upon the foregoing, the Government respectfully requests that Parks' Section 2255 Motion be denied without a hearing.

Respectfully submitted,

JEFFREY B. JENSEN
United States Attorney

*/s/ Howard J. Marcus*
HOWARD J. MARCUS, 29756MO
Assistant United States Attorney
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102
(314) 539-2200

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of the Court and mailed this 24th day of April 2019 to:

**Kyle Maurice Parks**
#44051-044
ALLENWOOD MEDIUM
FEDERAL CORRECTIONAL INSTITUTION
P.O. Box 2000
White Deer, PA 17887
PRO SE

s/ *Howard J. Marcus*
Howard J. Marcus, 29756MO
Assistant United States Attorney

23